UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) ORDER RE DEFENDANTS MEHRON, INC. AND MARTIN MELIK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE TO TRANSFER (DKT. 27);**

I.      <u>Introduction</u>

Lauren Mountain ("Plaintiff") filed this action on January 4, 2018. Dkt. 1. The First Amended Complaint ("FAC"), which is the operative pleading, advances a claim for copyright infringement under 17 U.S.C. §§ 101 *et seq.*, against Mehron, Inc. ("Mehron"), Martin Melik ("Melik") (collectively, the "Mehron Defendants"), Michael Costello ("Michael"), and Stephanie Costello ("Stephanie")[1] (collectively, the "Costello Defendants"). *See* FAC, Dkt. 19.

On April 9, 2018, the Mehron Defendants filed a Motion to Dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Dkt. 27 ("Motion").[2]  In the alternative, Defendants seek the transfer of this action to the Southern District of New York pursuant to 28 U.S.C. 1404(a). *Id.* Plaintiff filed an opposition to the Motion. Dkt. 30 ("Opposition"). The Mehron Defendants replied. Dkt. 31 ("Reply").

A hearing on the Motion was held on May 14, 2018, and the matter was taken under submission. Dkt. 33. For the reasons stated in this Order, the Motion is **DENIED IN PART**. A ruling on specific personal jurisdiction over Melik is **DEFERRED**, pending the completion of jurisdictional discovery and the filing of supplemental briefing.

---

[1]  The use of first names to identify those with common surnames follows the common practice that is used to simplify the discussion in this Order. No disrespect is intended by the use of this convention.
[2]  The Costello Defendants neither joined the Motion nor otherwise responded to the FAC. On June 28, 2018, Plaintiff filed requests to enter their defaults. *See* Dkts. 36-37. That request was granted pursuant to Fed. R. Civ. P. 55(a). *See* Dkt. 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

**II.** **Factual Background**

A. The Parties

1. Plaintiff

Plaintiff alleges that she is a "beauty and special effects makeup artist" based in Los Angeles, California. *See* FAC, Dkt. 19 ¶ 2. She alleges that she has more than 2.3 million subscribers on YouTube, and more than 2.3 million followers on Instagram. *Id.* ¶¶ 2, 31.

2. The Mehron Defendants

Plaintiff alleges that Mehron is a New York corporation whose principal place of business is in Chestnut Ridge, New York. *Id.* ¶ 25. It is alleged that Mehron regularly does business in California. *See id.* ¶¶ 20-21. Mehron allegedly participates in trade shows, including the International Makeup Artists Trade Show ("IMATS") in Los Angeles, at which Mehron is alleged to have had staffed booths every year from 2014 to 2018. *See id.*; Declaration of Lauren Mountain ("Mountain Decl."), Dkt. 20 ¶ 11.[3]

Plaintiff declares that Mehron is a family-owned business, which Melik's father founded in 1927. *See* Declaration of Lauren Mountain ("Mountain Decl."), Dkt. 20 ¶ 10. Plaintiff declares that Melik assumed control of Mehron in 1971, and that Melik is the "owner and the key operating officer of Mehron." *Id.*

Melik filed a declaration in connection with the prior motion to dismiss. *See* Declaration of Martin Melik ("Melik Decl."), Dkt. 15-2. He declares that he is the President of Mehron. *Id.* ¶ 2. He declares that he lives in New Jersey. *Id.* Melik states that he has no regular contacts in California, neither owns nor leases property in California, and has not been to California for several years. *Id.* ¶ 3.

Melik also declares that Mehron is a manufacturer and supplier of professional makeup products. *Id.* ¶ 2. He confirms that Mehron is a New York corporation whose principal place of business is in Chestnut Ridge, New York. *Id.* ¶ 6. He declares that Mehron employs approximately 45 people, eight of whom work out of its headquarters in Chestnut Ridge. *Id.* Melik also states that Mehron does not have any corporate offices in California. *Id.*

Melik declares that Mehron sells its makeup products through its website and retail stores. *See id.* ¶ 8. He declares Mehron has retail locations in California, which generate approximately 5% of its annual revenues. *Id.* He declares that all of Mehron's network and computer systems, as well as its website and blog, are maintained and operated in New York. *Id.* ¶¶ 9-10.

3. The Costello Defendants

The FAC alleges that Michael and Stephanie Costello are individuals who reside in Los Angeles, California. *See* FAC, Dkt. 19 ¶¶ 27-28. It also alleges that each is a well-known fashion designer, and that they do business through an entity called MT Costello. *Id.* ¶ 9, 18.

---

[3] The Mountain Declaration was submitted in connection with the prior motion to dismiss, which is now moot due to the filing of the FAC. *See* Dkt. 24. Because Plaintiff continues to rely on her declaration in connection with the Motion, it is considered here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

B.    The Copyrighted Work

It is alleged that, on or about December 31, 2014, Plaintiff created a makeup-based art work entitled "Under The Skin Human Mask and Snake." ("Under The Skin" or the "Copyrighted Work") *See* FAC, Dkt. 19 ¶ 2. Plaintiff registered Under The Skin with the United States Copyright Office. *See id.* ¶ 3; *see also* Certificate of Registration No. VA 2-011-446, Ex. D to Declaration of Gary Fergus ("Fergus Decl."), Dkt. 29-4. The Certificate of Registration became effective on March 17, 2015, and states that the date of first publication was January 30, 2015. *See id.*

Plaintiff alleges that seven images of Under The Skin were deposited with the Copyright Office in connection with the registration. FAC, Dkt. 19 ¶ 3. Those images are reproduced in the FAC. *Id.* The deposit images show a model wearing a mask, which peels back to reveal a layer of makeup that has reptilian characteristics. *See id.*; *see also* Exs. A-C to Fergus Decl., Dkts. 29-1, 29-2, 29-3.

On January 4, 2015 and January 8, 2015, Plaintiff allegedly posted certain videos to her YouTube channel. Each showed the process of the creation of Under The Skin. *See* FAC, Dkt. 19 ¶ 32.

C.    Allegations in the FAC

    1.    <u>Plaintiff is Contacted by Stephanie Koutikas on Behalf of Mehron</u>

On January 6, 2015, the FAC alleges that Plaintiff was contacted in California by Stephanie Koutikas ("Koutikas"). *See id.* ¶ 33. Koutikas is alleged to be employed by Mehron as a Marketing Director. *Id.* It is alleged that Koutikas, acting on behalf of Mehron and within the scope of her employment with Mehron, sought leave to use one of the images from the Copyrighted Work in connection with a project related to a "Halloween Expo" in New Orleans, Louisiana (the "New Orleans Project"). *Id.*

On January 16, 2015, Koutikas introduced Plaintiff to the Costello Defendants at the IMATS in Los Angeles. *Id.* ¶ 38. It is alleged that Koutikas made this introduction in connection with Mehron's ongoing efforts to collaborate with the Costello Defendants on their fashion shows. *See id.* ¶¶ 18-19.

It is alleged that, acting on behalf of Mehron, Melik orchestrated these contacts of Plaintiff by Koutikas. *See id.* 17-18, 22.

    2.    <u>The New Orleans Project</u>

The FAC alleges that, on January 9, 2015, Plaintiff told Koutikas that she was interested in licensing the Copyrighted Work in connection with the New Orleans Project. However, she also stated that a written licensing agreement between Mehron and Plaintiff would be required. *See id.* ¶ 35. It would set forth the terms and scope of the use, as well as an agreed-upon licensing fee. *Id.* On January 13, 2015, Plaintiff allegedly sent Koutikas a proposed written agreement for a license for one of the Under The Skin images, on one 10-by-20-foot wall banner, for an unlimited time in exchange for a one-time fee. *Id.* ¶ 36. The proposed contract allegedly expressly reserved for Plaintiff all copyright interests in the licensed image, and required Mehron to display on the banner a copyright notice identifying Plaintiff's copyright ownership in the image. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

On January 14, 2015, Koutikas asked Plaintiff to provide a proposed fee for an additional license for Mehron. This request concerned written materials that would explain the Under The Skin makeup look. *Id.* ¶ 37.

On January 25, 2015, Plaintiff allegedly sent a writing to Koutikas in which she asked whether the proposed licensing agreement had been signed by Mehron. *See id.* ¶ 39. Koutikas allegedly responded on January 26, asking that the contract be resent with a new term regarding the written materials discussed earlier. *See id.* Plaintiff allegedly responded to this request on January 27, 2015, with proposed pricing for the requested additional use of the Copyrighted Work. *Id.*

It is alleged that, on February 6, 2015, because Plaintiff had not heard from Koutikas or Mehron about the New Orleans Project since the communications in late January, Plaintiff wrote to Koutikas seeking an update. *See id.* ¶ 45. Plaintiff alleges that, because the expo in New Orleans was scheduled to begin on that day, she told Koutikas that she expected that Mehron would not be using the banner that had been discussed in January. She stated that this was her expectation because Mehron had neither signed the proposed licensing agreement nor paid Plaintiff the proposed licensing fee. *See id.* Plaintiff alleges that later on February 6, 2015, she saw images on the expo website showing that the banner displaying the image of Under The Skin had been published by Mehron. *Id.* ¶ 47. She wrote again to Koutikas, stating that Mehron did not have authority to use the banner with Plaintiff's copyrighted work. *See id.*

In response to Plaintiff's communications to Koutikas, Melik sent an e-mail to Plaintiff on February 6, 2015. *See id.* ¶ 47; Mountain Decl. ¶ 8. In the e-mail, a portion of which is reproduced in the Mountain Declaration, Melik states that he is the owner/president of Mehron, and that Koutikas "has been keeping me in the communication loop between the two of you going back to early January when we first asked you for your permission and agreement to utilize the incredibly artistic image of your creative makeup work . . . 'Under The Skin'." Mountain Decl. ¶ 8. Melik also stated that Mehron's failure to execute the licensing agreement was an "oversight," which he wished to resolve. *See id.*

Plaintiff alleges that Melik executed the licensing agreement in his name, not on behalf of Mehron. *See id.* ¶ 9; FAC, Dkt. 19 ¶ 49. It is alleged that Mehron then paid the agreed-upon fee for the unlimited use of the Copyrighted Work on the banner, and the use of the work in the written materials to be used in New Orleans. FAC ¶ 49. Plaintiff alleges that the license was limited to the use of the Copyrighted Work on the single banner and on a handout to be distributed at the expo on February 7 and 8, 2015. *Id.*

3. The Costello Fashion Show

On January 30, 2015, after Koutikas allegedly introduced Plaintiff to the Costello Defendants at the IMATS in Los Angeles, Stephanie Costello contacted Plaintiff through Instagram. *See id.* ¶ 40. It is alleged that the message from Stephanie included the same image from Under The Skin that was licensed to Mehron in connection with the New Orleans Project. *Id.* The FAC alleges that Stephanie asked whether Plaintiff would be willing to allow the use of the Copyrighted Work in connection with a fashion show that the Costello Defendants planned to present at the 2015 Mercedes Benz Fashion Week festival in New York City (the "Costello Fashion Show"). *See id.* ¶¶ 4, 10, 22, 40. The FAC also alleges that, on the same day, Plaintiff received an e-mail from Kyle C. Beach ("Beach"), Creative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

Director for MT Costello, who repeated Stephanie's interest in working with Plaintiff. *Id.* ¶ 41.

The FAC next alleges that Plaintiff responded through an e-mail in which she stated that she had an "extreme interest," in the proposal, and offered to adapt Under The Skin for the finale of the Costello Fashion Show. *Id.* It also alleges that, between January 30, 2015 and February 6, 2015, Plaintiff communicated with Beach about the re-creation of Under The Skin for the Costello Fashion Show. *Id.* ¶ 42.

On February 6, 2015, Beach allegedly sent an e-mail to Plaintiff. It allegedly stated that, although the Costello Defendants remained interested in working with Plaintiff, the Costello Fashion Show project had been "put on the back burner." *Id.* ¶ 44. On February 10, Beach allegedly informed Plaintiff that if she still wanted to be involved in the Costello Fashion Show, she would have to be hired by Mehron and agree to work on its makeup team. *See id.* ¶ 50.

The FAC alleges that, on February 19, 2015, Plaintiff first discovered that Under The Skin had been "adapted, copied and displayed" during the Costello Fashion Show. *Id.* ¶ 51. It also alleges that Plaintiff never authorized or licensed such use. *Id.* The FAC further alleges that Mehron sent messages through social media both before and after the Costello Fashion show. Each implied that Mehron had been collaborating with the Costello Defendants on the makeup for the show. *See* Mountain Decl. ¶¶ 2-6.

It is alleged that, on February 20, 2015, Michael Costello acknowledged that the adaptation of Under The Skin displayed during the Costello Fashion Show was inspired by Plaintiff's work, and that Mehron had recreated the work on behalf of the Costello Defendants. *See id.* ¶ 52. On the same day, Mehron allegedly admitted that Plaintiff inspired the designs used at the Costello Fashion Show, and that Mehron had "recreate[d] her work." *Id.* ¶ 53.

The FAC alleges that, until this action was filed, Mehron continued its unauthorized use of the Copyrighted Work by displaying it on its website. *See id.* ¶ 54.

## III.   Summary of the Works

Plaintiff has submitted images of Under The Skin side-by-side with images of the allegedly infringing works that were displayed at the Costello Fashion Show. *See* Exs. A-C to Fergus Decl., Dkts. 29-1, 29-2, 29-3. However, at the May 14, 2018 hearing, Plaintiff's counsel clarified that the images are not the allegedly copyrighted works, but, rather, are partial representations of Under The Skin, whose entire design Plaintiff claims as a copyrighted work. Similarly, Plaintiff contends that the images of the makeup designs displayed at the Costello Fashion Show are not alleged to be infringing, but, rather, are representations of the allegedly infringing makeup design.

**Exhibit A to Fergus Decl.** (Dkt. 29-1)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |




Allegedly Infringing Work                    Copyrighted Work

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

**Exhibit B to Fergus Decl.** (Dkt. 29-2)





Allegedly Infringing Work                    Copyrighted Work[4]

---

[4]  This image is alleged to have been reproduced by Mehron on its website up through the time of the filing of this action. *See* FAC, Dkt. 19 ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

**Ex. C to Fergus Decl.** (Dkt. 29-3)





Allegedly Infringing Work                         Copyrighted Work

\*               \*               \*

The FAC alleges that the Mehron Defendants had access to Under The Skin, through Plaintiff's participation in the New Orleans Project, and willfully infringed Plaintiff's copyrighted work. It alleges that they did so: (i) by collaborating with the Costello Defendants to adapt and display versions of the Copyrighted Work at the Costello Fashion Show, and (ii) by copying and displaying an image of the Under The Skin work on Mehron's website. *See* FAC, Dkt. 19 ¶¶ 6-8, 26, 33, 51-54, 60. As noted, the image of the Copyrighted Work depicted in Exhibit B to the Fergus Decl. (Dkt. 29-2) was allegedly reproduced and published on the Mehron website until this action was filed. FAC ¶ 8.

The FAC alleges that the Costello Defendants had access to Under The Skin, through their collaboration with Mehron, and due to the preliminary efforts to work with Plaintiff on the Costello Fashion Show. It also alleges that they willfully infringed the Copyrighted Work by adapting and displaying versions of it at the Costello Fashion Show. *See id.* ¶¶ 4-7, 27-28, 40-42, 50-53, 59. Specifically, the FAC alleges that Stephanie initially contacted Plaintiff by Instagram and attached to that online message the same image that had been licensed to Mehron in connection with the New Orleans Project. *Id.* ¶ 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

**IV.** **Analysis**

    A.    Motion to Dismiss for Lack of Personal Jurisdiction

        1.    Legal Standards

A party may move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In a proceeding on such a motion, the party asserting jurisdiction bears the burden of establishing it. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). If the court does not require an evidentiary hearing, a plaintiff need make only a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto*, 539 F.3d at 1015. However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

To establish personal jurisdiction, a party must show that both the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). California's long-arm statute is co-extensive with the scope of what is permitted by federal and constitutional due process. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.")). Under constitutional due process requirements, personal jurisdiction may be exercised over a nonresident party if that party has "minimum contacts" with the forum state, so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

Where the evidence as to jurisdiction has not been sufficiently developed to permit the application of the foregoing standards, a district court has discretion to permit jurisdictional discovery. *See Harris Rutsky*, 328 F.3d at 1135; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

        2.    Application

Depending on the nature and extent of the contacts, if any, of a defendant with a forum state, the exercise of personal jurisdiction may be either general -- the party is subject to any claims in that forum, or specific -- the party is subject only to causes of action arising out of its forum related activities that relate to the action in which jurisdiction has been asserted. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, Plaintiff only asserts the latter as a basis for jurisdiction over the Mehron Defendants. *See* Dkt. 30 at 14 n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

a)   Specific Jurisdiction as to Mehron

Specific jurisdiction may be exercised over a party if the underlying claims arise out of that party's forum-related contacts. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit has established a three-part test to assess specific jurisdiction:

> (1) the defendant must purposefully avail himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and
> (3) the exercise of jurisdiction over the defendant must be reasonable.

*See Schwarzenegger*, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).

A plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If they are satisfied, the burden then shifts to the party contesting jurisdiction to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802.

(1)   Purposeful Availment or Direction

The first element of the specific jurisdiction test may be satisfied with facts sufficient to show either "purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, are in fact two distinct concepts." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Pebble Beach*, 453 F.3d at 1155). "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. Evidence of direction generally consists of action taking place outside the forum that is directed at that forum." *Pebble Beach*, 453 F.3d at 1155 (internal citations omitted).

In general, the purposeful direction test applies in copyright infringement actions. *See Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011); *Brayton Purcell*, 606 F.3d at 1128. *Calder v. Jones* sets forth a three-part test to determine whether purposeful direction has been shown. 465 U.S. 783 (1984). Under the *Calder* effects test, it must be alleged that the defendant (1) "committed an intentional act," that was (2) "expressly aimed at the forum state," and (3) "caus[ed] harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

Purposeful direction may be shown even where the defendant has not had actual contact with the forum state. *See Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989) ("The fact that there was no physical contact with California and that their actions all took place in Florida would not relieve them of personal jurisdiction where the effects of their Florida conduct were felt in California . . . ."). Application of the *Calder* effects test focuses on the defendant's relationship with the state, "not just to the plaintiff." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|----------|--------------------------|------|-----------------|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

(a)  Intentional Act

An intentional act is one committed with the "intent to perform an actual, physical act in the real world." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 806). Consideration of the act is limited to whether an "external manifestation of the actor's will" is reflected, and "does not include any of [the act's] results, even the most direct, immediate, and intended." *Schwarzenegger*, 374 F.3d at 806.

The FAC alleges that Koutikas, acting within her scope of employment at Mehron, and on Mehron's behalf and direction, contacted Plaintiff in California and sought to do business with her. *See* FAC ¶¶ 33-36. It also alleges that Mehron collaborated with the Costello Defendants with the intent to infringe Plaintiff's copyright by displaying the works derived from Under The Skin at the Costello Fashion Show, and by posting the Under The Skin image on Mehron's website. *Id.* ¶¶ 4, 8-9, 60. Mehron does not contest that the challenged image appeared on its website.

For these reasons, the FAC sufficiently alleges that Mehron engaged in an intentional act.

(b)  Expressly Aimed at the Forum

The "express aiming" prong of the *Calder* effects test requires "something more" than a "foreign act with foreseeable effects in the forum state." *Washington Shoe v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). The "something more" requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* However,

> the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.

*Walden*, 134 S. Ct. at 1122 (internal citations and quotation marks omitted).

*Walden* "reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Picot*, 780 F.3d at 1214 (citing *Walden*, 134 S. Ct. at 1119-20).

The FAC alleges that the Mehron Defendants targeted Plaintiff in California, negotiated a licensing transaction with her here, and then worked directly with the Costello Defendants to effect an intentional and willful infringement of Plaintiff's Copyrighted Work. It alleges that they did so by recreating the Under The Skin at the Costello Fashion Show. FAC, Dkt. 19 ¶¶ 33-39, 51-54. The FAC also alleges that Mehron intentionally infringed by displaying the Copyrighted Work on its website. FAC, Dkt. 19 ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

60; Mountain Decl. ¶ 20.

The Mehron Defendants argue that Mehron's alleged communications with Plaintiff regarding the New Orleans Project, and the alleged attendance of a Mehron representative at the IMATS show do not warrant the exercise of personal jurisdiction in California with respect to its alleged adaptation of Plaintiff's art at a fashion show in New York. *See* Dkt. 27 at 16.

The express aiming analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Thus, intentional torts, including willful copyright infringement, have been deemed expressly aimed at a forum and not "untargeted negligence." *Calder*, 465 U.S. at 789. Applying this framework, the Ninth Circuit has held that allegations of willful copyright infringement, coupled with the defendant's knowledge of both the existence of the copyright and the copyright holder's presence in the forum state, is sufficient "individualized targeting" to establish the "something more" necessary to satisfy the express aiming requirement. *See Washington Shoe*, 704 F.3d at 768-79; *see also Brayton Purcell*, 606 F.3d at 1130-31 (where alleged infringer's conduct "was intention, wrongful, and aimed at [plaintiff] . . . [t]he express aiming prong is therefore satisfied.").

The Supreme Court's decision in *Walden* led to a modification of this approach. Thus, the Ninth Circuit has held that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017); *see also Picot*, 780 F.3d at 1214-15. Under *Walden*, the touchstone of the specific jurisdiction analysis is the defendant's contacts with the forum, not defendant's knowledge of the plaintiff's presence in that forum. *See Walden*, 134 S. Ct. at 1124-25.

Mehron's alleged contacts with California are sufficient to state the claim that its alleged conduct here was expressly aimed at California. Mehron sells beauty products. The FAC alleges that it sells such products in California. It is also alleged that Mehran solicits business in California through in person contacts at trade shows here. FAC, Dkt. 19 ¶¶ 20-21. It allegedly does so to improve its brand recognition in the California "specialized makeup market." *See* Mountain Decl. ¶ 12. It is also alleged that Mehron's initial solicitation of Plaintiff was conducted by Koutikas, on behalf of Mehron, and that Koutikas introduced Plaintiff to the Costello Defendants at the IMATS show in California in January 2015. Such contacts were not "random, fortuitous, or attenuated," nor were they based on the "unilateral activity" of Plaintiff. *Walden*, 134 S. Ct. at 1123. Rather, they constitute alleged "intentional conduct by the defendant" which "connected the defendants' conduct to *California*, not just to a plaintiff who lived there." *Id.* at 1124 (emphasis in original).

Furthermore, Plaintiff also creates beauty and makeup products. *See* FAC ¶ 2. It is reasonable to construe the FAC to allege that Mehron's exploitation of Under The Skin was part of direct competition with Plaintiff in a specialized business market. This inference is supported by the allegation that, after Plaintiff discussed a potential collaboration with the Costello Defendants in January 2015, she was informed by Beach that the Costello Defendants would be collaborating with Mehron instead of with Plaintiff. *See* FAC ¶ 50. Allegations that a defendant engaged in copyright infringement to compete with a plaintiff within a forum, support a determination that the defendant's acts were expressly aimed there. *See, e.g., Mavrix Photo*, 647 F.3d at 1229-31 (finding sufficient minimum contacts where defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|----------|--------------------------|------|-----------------|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

posted allegedly infringing photographs on its website "as part of its exploitation of the California market for its own commercial gain"); *Brayton Purcell*, 606 F.3d at 1129-30 ("express aiming" prong satisfied where law firm allegedly plagiarized copyrighted material owned by another firm that practiced in the same legal field); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (jurisdiction turns on the fact that website operator "individually targeted [plaintiff] by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum.") (quoting *Love v. Associated Newspapers*, 611 F.3d 601, 608-09 (9th Cir. 2010)).

These alleged contacts with California are distinguishable from the allegations of copyright infringement in *Axiom Foods*. There, a manufacturer of health and nutritional products, located in the United Kingdom and headquartered in China, sent an e-mail to certain addresses a newsletter promoting certain products. Most of the recipients of the newsletter were located in Europe; about ten were located in California. *See Axiom Foods*, 874 F.3d at 1067. The newsletter included copies of the logos of American food suppliers. Those parties then brought a claim for copyright infringement in California against the manufacturer. *Id. Axiom Foods* held that the contacts between the foreign entities and California were insufficient to establish a basis for specific jurisdiction in this forum. *Id.* at 1070-71. *Axiom Foods* also recognized that the *Calder* effects test was consistent with the forum-based analysis mandated by *Walden*:

> In *Calder*, a California actress brought a libel action against two nonresident defendants in California state court, based on an article defendants wrote for the National Enquirer. The Supreme Court found the defendants' forum contacts to be ample. The defendants contacts 'California sources' for information and wrote about the actress's activities in California. Roughly 600,000 copies of the article were sold in California, where the actress suffered the 'brunt' of the reputational injury. In short, '[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff.' In this case [defendant] sent one newsletter to a maximum of ten recipients located in California, in a market where [defendant] has no sales or clients. The alleged infringement barely connected [defendant] to California residents, much less to California itself.

*Id.* at 1071.

The FAC sufficiently alleges that Mehron's "suit-related conduct . . . "created a substantial connection with [California]" sufficient to satisfy the "expressly aimed" prong of the *Calder* effects test. *See id.*, 874 F.3d at 1070 (quoting *Walden*, 134 S. Ct. at 1121). Thus, Mehron does business in California, attends trade shows in California, and targeted Plaintiff in California where it also negotiated a license with her. The subject matter of the license is directly related to the alleged infringement. These contacts are sufficient to warrant the exercise of personal jurisdiction over Mehron in California under the *Walden* framework. *See DEX Sys., Inc. v. Deutsche Post AG*, No. 16-56044, 2018 WL 1280917, at *2 (9th Cir. Mar. 13, 2018) (the unauthorized accessing of plaintiff's computer servers located in California was sufficient to exercise specific jurisdiction over a foreign defendant that had no other contacts in California) (citing *Burger King*, 471 U.S. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

(c)      Caused Harm in the Forum

"The final element requires that [the defendant's] conduct caused harm that it knew was likely to be suffered in the forum state." *Brayton Purcell*, 606 F.3d at 1131. This element is satisfied where a defendant's "intentional act has 'foreseeable effects' in the forum," although "this element may be established even if the 'bulk of the harm' occurs outside the forum." *Id.* (internal citations omitted). Physical presence in the forum state reinforces the foreseeability of litigation there, but an absence of physical presence does not preclude personal jurisdiction. *Burger King*, 471 U.S. at 476.

\*                              \*                              \*

For the foregoing reasons, Plaintiff has satisfied each prong of the *Calder* effects test.[5]

(2)      Whether the Claim Arises Out of Defendant's Forum-Related Activities

A claim arises out of a defendant's forum-related activities if, "but for" those activities, the claim would not have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). "The Ninth Circuit has recognized that, in trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Adobe Sys. Inc. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015) (citing *Panavision*, 141 F.3d at 1322). Thus, Plaintiff's claim would not have arisen but for the forum-related contacts of the Mehron Defendants. These include the in-person solicitation of Plaintiff, in in California, in connection with exploiting Under The Skin.

For these reasons, this element of the specific jurisdiction test is satisfied.

(3)      Whether the Exercise of Jurisdiction Over Defendant is Reasonable

Because Plaintiff has established a prima facie basis for the exercise of specific jurisdiction, the Mehron Defendants bear the burden of presenting a "compelling case" that the exercise of jurisdiction would be unreasonable. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476-78). To determine whether jurisdiction is reasonable, seven factors are considered:

(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence

---

[5]  This conclusion is consistent with the limitations of *Walden*. "An injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S. Ct. at 1125. In *Walden*, the claimed injury -- the seizure of funds in Georgia by federal law enforcement officials --was "not the sort of effect that is tethered to Nevada in any meaningful way." *Id.* Here, Mehron's in-person solicitation of Plaintiff's business, in California, combined with the more general consistency with which it conducts business her, is conduct sufficient to "connect [Mehron] to the forum in a meaningful way." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

of an alternative forum.

*CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (internal citations omitted).

Factor (1), the extent of Mehron's purposeful interjection into California's affairs, weighs in favor of exercising personal jurisdiction. Thus, it has been determined that Mehron does business in California, participates in the California beauty and makeup products market, frequently attends trade shows in California and solicits business with persons who reside in California. This conduct is sufficient to show that it directs its "activities to the forum to a degree sufficient to satisfy the purposeful availment requirement." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). Furthermore, Mehron, through Koutikas and Melik, specifically targeted Plaintiff, and her works, in California. This made foreseeable that its later, out-of-forum conduct would cause injury to Plaintiff here. *See Panavision*, 141 F.3d at 1323 (purposeful interjection prong weighed "strongly in favor" of the exercise of jurisdiction because the defendant knew that his tortious conduct would likely injury the plaintiff in California).

Factor (2), the burden on the defendant of defending in the forum, is neutral. Mehron is a New York entity with 45 employees. *See* Melik Decl., Dkt. 15-2 ¶ 6. Melik, who is Mehron's principal, resides in New Jersey. *Id.* ¶ 2. Defending this action in California may impose certain burdens on the Mehron Defendants with respect to time and expenses associated with travel. However, the burden is mitigated significantly by "modern advances in communications and transportation." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Thus, this factor is not dispositive even when defendants reside in other countries. *See, e.g. Dole*, 303 F.3d at 1115; *Sinatra*, 854 F.2d at 1119. Therefore, although the burden on a defendant in litigating in the forum state is a factor to consider, it will not overcome "clear justifications for the exercise of jurisdiction" unless the demonstrated "inconvenience is so great as to constitute a deprivation of due process." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995).

Factor (3) -- the extent of conflict with the sovereignty of the Defendants' home state -- weighs against exercising jurisdiction. However, this consideration is outweighed by Factor (4), the forum state's interest in adjudicating the dispute. No conflicts with the sovereign interests of New York or New Jersey have been presented. California has a strong interest in providing a forum for its residents and citizens who have been injured by tortious conduct. *See Panavision*, 141 F.3d at 1323. Plaintiff is a resident of California, and her beauty and makeup art business is based here. *See* FAC, Dkt. 19 ¶ 31. Therefore, these factors, on balance, weigh in favor of exercising jurisdiction.

Factor (5) focuses on the location of the evidence and witnesses. It no longer merits significant weight in light of the aforementioned advances in communication. *See Panavision*, 141 F.3d at 1323; *Caruth*, 59 F.3d at 129. Melik declares that he is a New Jersey resident, and that Mehron's principal place of business is in New York. *See* Melik Decl. ¶¶ 2, 6. He also declares that Mehron does not have any offices in California. *Id.* ¶ 7. Plaintiff is a California citizen. FAC ¶ 31. The Costello Defendants also allegedly reside here. *Id.* ¶¶ 27-28. The domicile of Koutikas, who is likely to be a witness in this action, has not been alleged. However, it is alleged that she was present in California, on behalf of Mehron, during the relevant time period. Plaintiff declares that Beach, who was allegedly employed with the Costello Defendants, resides in California. *See* Mountain Decl., Dkt. 20 ¶ 16. A consideration of this information as a whole, shows that this factor weighs slightly in favor of exercising jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

Factor (6) -- the importance of the forum to the plaintiff's interest in convenient and effective relief -- weighs slightly in favor of exercising jurisdiction. Litigating in her home state is "obviously most convenient" for Plaintiff. *CE Distribution*, 380 F.3d at 1112. However, the plaintiff's convenience is "not of paramount importance." *Dole*, 303 F.3d at 1116.

Factor (7) -- the existence of an alternative forum -- weighs against the exercise of jurisdiction. New York is an alternative forum that would have jurisdiction over the operative claims.

* * *

When considered collectively and balanced, these factors show that Mehron has failed to present a "compelling case" to overcome the "strong presumption of reasonableness of the assertion of personal jurisdiction" that exists when a plaintiff establishes a prima facie case for jurisdiction. *See Dole*, 303 F.3d at 1117. Because all three prongs of the *Schwarzenegger* specific jurisdiction test have been met, the exercise of jurisdiction over Mehron is appropriate.

b)     Specific Jurisdiction as to Melik

Plaintiff contends that there is personal jurisdiction over Melik in his individual capacity because he "owns and controls the activities of Mehron both in and directed to California." Dkt 30 at 20. Thus, it is alleged that he orchestrated Koutikas's solicitation of Plaintiff in California in connection with the New Orleans Project, as well as Koutikas's introduction of Plaintiff to the Costello Defendants in connection with Mehron's collaboration with them. *See* FAC ¶¶ 17-18; Mountain Decl. ¶ 15. Melik also allegedly sent an e-mail to Plaintiff on February 6, 2015, concerning Mehron's use of Under The Skin (FAC ¶ 14; Mountain Decl. ¶ 8), after which he allegedly signed the license agreement with Plaintiff in his individual capacity, not on behalf of Mehron. FAC ¶ 15; Mountain Decl. ¶ 9.

Defendants respond that the fiduciary shield doctrine precludes jurisdiction over Melik in his individual capacity. *See* Dkt. 27 at 18-19. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (internal citations omitted). However, the fiduciary shield doctrine does not apply where a corporate officer is "the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Id.* at 523 n.10 (quoting *Escude Cruz v. Ortho Pharma. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)). Contacts by a corporate officer in the forum undertaken on behalf of a corporation may subject the officer to personal jurisdiction where the officer "is a primary participant in the alleged wrongdoing" or "had control of, and direct participation in the alleged activities." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

*Calder* recognized this basis for personal jurisdiction. 465 U.S. at 789-90 ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

Courts have declined to apply the fiduciary shield doctrine where the individual defendant is a senior or controlling officer of the defendant corporation, or was the "central figure" in the challenged corporate conduct. *Davis*, 885 F.2d at 524 (personal jurisdiction over individual defendants each of whom owned 50% of the defendant entity); *see also Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072-73 (C.D. Cal. 2004) (personal jurisdiction where individual defendant "personally directed, participated in, and authorized the alleged infringing activity"); *but see Click v. Dorman Long Tech., Ltd.*, No. 06-cv-1936-PJH, 2006 WL 2644889, at *5 (N.D. Cal. Sept. 14, 2006) (no personal jurisdiction over individual who was only an employee and not an executive officer, director, or primary shareholder of the company).

As noted, Plaintiff has alleged that Melik owns, and controls the activities of Mehron, and that he orchestrated the negotiations with Plaintiff in connection with the New Orleans Project. FAC ¶¶ 17-18; Mountain Decl. ¶ 15. However, the only basis for these contentions is the e-mail Melik sent to Plaintiff on February 6, 2015, and his execution of the licensing agreement. FAC ¶¶ 14-15. Although these allegations support the position that Melik had final authority to approve Plaintiff's agreement with Mehron, they do not provide a basis to conclude that Melik directly controlled and orchestrated Koutikas's efforts to solicit Plaintiff's business in California. Furthermore, the licensing agreement executed in connection with the New Orleans Project does not give rise to Plaintiff's copyright infringement claim. Instead, it is premised on the allegedly infringing duplication of the Copyrighted Work at the Costello Fashion Show, as well as the alleged posting of the work on Mehron's website. Melik's role in these alleged events has not been stated.

Melik declares that he has no regular contacts with California. Melik Decl., Dkt. 15-2 ¶ 3. He further states that he has never spoken with, or met in person with Plaintiff, and that the only communications he had with her concerned the execution of the licensing agreement in connection with the New Orleans Project. *Id.* ¶ 4. He also declares that he has never met the Costello Defendants, and he did not attend the Costello Fashion Show. *Id.* ¶ 5. Further, the limited evidence that has been submitted by Plaintiff is insufficient to establish that Melik was the "central figure" in Mehron's alleged involvement with the Costello Fashion Show, and the alleged infringement of Under the Skin that occurred there. *Davis*, 885 F.3d at 524.

In light of the present record and the disputed facts, jurisdictional discovery is warranted. Therefore, the parties shall conduct such limited discovery with respect to the extent and nature of Melik's role in Mehron's contacts with Plaintiff in California. This discovery shall be completed within 45 days of the issuance of this Order. Within 60 days of its issuance, Plaintiff shall submit a brief, not to exceed 10 pages, in support of her position that the evidence developed through the discovery shows that Melik had a sufficiently central a role in Mehron's alleged conduct to warrant the exercise of personal jurisdiction in his individual capacity. Within seven days of the submission of Plaintiff's supplemental brief, Defendants shall file a response, not to exceed 10 pages. Upon receiving the supplemental briefing, the Court will determine whether a further hearing will be necessary or if the matter will be taken under submission. In light of this process, the ruling on the Motion is **DEFERRED** as to specific jurisdiction over Melik.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

B.   Motion to Dismiss for Failure to State a Claim for Copyright Infringement

1.   <u>Legal Standards</u>

a)   Motion to Dismiss

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendants liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A defendant may move to dismiss a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Such a motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations of the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

b)   Copyright Infringement

To establish copyright infringement, a plaintiff must show (i) "ownership of a valid copyright," and (ii) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). The Ninth Circuit has recently clarified that the second element of copyright infringement involves two distinct components: "copying" and "unlawful appropriation." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (citing *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164-65 (9th Cir. 1977)). Proof of copying is required because "independent creation is a complete defense to copyright infringement." *Id.* (citing *Feist*, 499 U.S. at 345-46). Proof of unlawful appropriation is required because certain copying – including the reproduction of "ideas" or "concepts" used in the plaintiff's work – is not prohibited by the Copyright Act. *Id.* (citing 17 U.S.C. § 102(b)).

The second element of a copyright infringement claim -- proof of copying plus unlawful appropriation -- "involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

2.    Application

a)    Ownership of a Valid Copyright

A copyright may issue to "an original work of authorship" that is fixed in a tangible form. 17 U.S.C. § 102(a). Copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery." 17 U.S.C. § 102(b).

Registering a copyright with the Copyright Office is a prerequisite to filing a civil action for infringement under the Copyright Act. *See* 17 U.S.C. § 411(a); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 678 (9th Cir. 2014). Plaintiff has submitted the Certificate of Registration for Under The Skin, which states that January 31, 2015 is the date of first publication. *See* Ex. D to Fergus Decl., Dkt. 29-4. Under The Skin is described by the Certificate of Registration as a "2-D artwork." *Id.*

Defendants argue that Plaintiff has not plausibly alleged ownership of a copyright because she "never identifies the nature of her copyrighted Artwork." *See* Dkt. 27 at 22-23. This argument is not persuasive. Plaintiff submitted copies of the seven images she deposited with the Copyright Office in connection with the registration. *See* FAC, Dkt. 19 ¶ 3. She also provided enhanced images of the allegedly infringing makeup design that was presented at the Costello Fashion Show. *See* Exs. A-C to Fergus Decl., Dkt. 29-1, 29-2, Dkt. 3. These images are representative of the makeup design expressed by Under The Skin, which together form the basis and source of Plaintiff's alleged copyright. *See Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 247 (S.D.N.Y. 2000) (makeup designs are copyrightable and "the creator of such [d]esigns is entitled to protection even if he or she does not apply the makeup to the show's performers.").[6]

Further, as noted, Plaintiff submitted a copy of the Certificate of Registration, which provides prima facie evidence of the validity of a copyright. *See Three Boys*, 212 F.3d at 488-89. Defendant may rebut that presumption by showing either that the work is not original, or that the copyright is otherwise invalid. *See N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1143-44 (9th Cir. 2003). Defendant has not submitted any evidence to support either of these exceptions.

For the foregoing reasons, the FAC adequately alleges ownership of a valid copyright.

---

[6] If Defendants' argument were interpreted as a challenge to the nature of Under the Skin as a makeup design, and its eligibility for copyright in that context, the conclusion would be the same. The Copyright Act only protects works that are incorporated into a "useful article" when the article's design "incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101. This language provides copyright protection to the feature of a design of a useful article, including makeup, if "when identified and imagined apart from the useful article, it would qualify as a pictorial, graphic, or sculptural work either on its own or when fixed in some other tangible medium." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1012 (2017). In *Star Athletica*, the surface design of a cheerleading uniform was found eligible for copyright protection because it was separately identifiable from the uniform itself. *Id.* Similarly the design of Under the Skin -- its color, texture, and dual-layered nature -- is separately identifiable from the makeup as it appears on the face of a model. *See* Exs. A-C to Fergus Decl., Dkt. 29-1, 29-2, 29-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

b) The Substantial Similarity Test

Absent direct evidence of copying, proof of copying "involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Funky Films*, 462 F.3d at 1076 (internal quotation marks and citations omitted).[7] Under the "inverse ratio rule," the burden to prove substantial similarity is lowered proportionally with respect to the evidence showing the defendant's access to the work. *See Rentmeester*, 883 F.3d at 1124 ("Under the inverse ratio rule, we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (citing *Three Boys*, 212 F.3d at 485) (internal quotation marks omitted); *Metcalf v. Bochco*, 294 F.3d 1069, 1075 (9th Cir. 2002) ("The [plaintiffs'] case is strengthened considerably by [the defendant's] concession of access to their works."). However, the inverse ratio rule relates only to proof that the allegedly infringing work was the product of copying not independent creation. It does not apply in determining whether the alleged appropriation was improper because it reflected copying of protectable elements. *See Rentmeester*, 883 F.3d at 1124 ("The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown.") (citing *Peters v. West*, 692 F.3d 629, 635 (7th Cir. 2012)).

The FAC adequately alleges that the Mehron Defendants had access to the Copyrighted Work. Therefore, the inverse ratio rule reduces the level of similarity necessary to show that the allegedly infringing work was unlikely to have been the product of independent creation. *See, e.g.*, *Baxter v. MCA, Inc.*, 813 F.2d 421, 423-24 (9th Cir. 1987). But "the plaintiff must still show copying of protected expression that amounts to *unlawful* appropriation . . . [and that] balance does not shift depending on how strong the plaintiff's proof of access may be." *Rentmeester*, 883 F.3d at 1124.

Substantial similarity with respect to infringement refers to "similarity of expression, not merely similarity of ideas or concepts." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997) (citing 17 U.S.C. § 102(b)). Thus, only protected expression is relevant for purposes of assessing substantial similarity, and a court must "filter out and disregard the non-protectable elements in making [its] substantial similarity determination." *Id.* (internal quotation marks omitted). However, "[t]he particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." *Metcalf*, 294 F.3d at 1074.

The Ninth Circuit has adopted a two-step process for determining whether two works are substantially similar. The first step is an "extrinsic" test, which if followed by an "intrinsic" one. *Funky Films*, 462 F.3d at 1077; *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018). The extrinsic test is an objective comparison of specific expressive elements. On a motion to dismiss, "courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of a jury." *Funky Films*, 462 F.3d at 1077.

---

[7] Due to this fact-based inquiry, in general, dispositive pretrial motions on substantial similarity grounds are denied. *See, e.g.*, *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985) ("summary judgment is not highly favored on the substantial similarity issue in copyright cases."). However, non-infringement may be determined on a motion to dismiss when "the copyrighted work and the alleged infringement are both before the court." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Gadh v. Spiegel*, No. 14-cv-855-JFW, 2014 WL 1778950, at *3 n.2 (C.D. Cal. Apr. 2, 2014) (collecting cases where district courts have dismissed copyright infringement claims by comparing two works that are set forth in the pleadings).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

Under The Skin, is described as a "makeup art work." FAC, Dkt. 19 ¶ 2. In applying the extrinsic test for substantial similarity to compare this form of visual art to the allegedly infringing works, it is appropriate to examine "the similarities in their objective details in appearance, including, but not limited to, the subject matter, shapes, colors, materials, and arrangement of the representations." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012) (internal quotation marks and citations omitted).

An examination of the images of the Copyrighted Work and the allegedly infringing works, which have been submitted as Exhibits A-C to the Fergus Declaration (Dkts. 29-1, 29-2, and 29-3), and reproduced above, shows that there are several similarities. These include: (i) the overall aesthetic, which includes a pattern of make-up that resembles a snake skin on a model's face, the removal of a mask to allow a viewing of the complexion and the appearance of a human face; (ii) similar gold, black and green colors on the model's face; (iii) a similar pattern, scaling and shape of colors; (iv) minimizing the eyebrows; (v) emphasizing the black pupils and gold irises; and (vi) masks with a human-like face with dark red lipstick, plain tan skin and a blank, expressionless complexion. *See* Exs. A-C to Fergus Decl., Dkt. 29-1, 29-2, 29-3. These similarities are sufficiently alleged to support the view that a reasonable juror could find the two works are substantially similar. *See L.A. Printex*, 676 F.3d at 849. The similarities in color and texture as well as in the arrangement of elements of Under the Skin and the allegedly infringing work are sufficient to establish a prima face case for copyright infringement at the pleading stage.

Defendants argue that the only similarities between the works are common ideas or representations of natural phenomena that are not protectable and must be disregarded in considering substantial similarity. *See* Dkt. 27 at 24-30. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *Dr. Seuss*, 109 F.3d at 1398. Defendants argue that elements of the design including the "reptilian patterning, the human face," or the shedding of the mask to reveal the snakelike skin, are examples of "the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." Dkt. 27 at 25 (quoting *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003)). Defendants also argue that where an idea and its expression are inseparable, no protection is warranted. *Id.* (citing *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)). Thus, under the "*scenes a faire*" doctrine, "when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright." *Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004).

Defendants' *scenes a faire* argument is not convincing. The resolution of a copyright infringement claim through a motion based on *scenes a faire* is inappropriate absent independent evidence that the challenged expressions fit within that doctrine. *Id.* at 850. No such evidence has been submitted. Furthermore, the expression that forms the basis for the claim here is the combination of several artistic choices that resulted in the overall effect of Under The Skin. Based on the present record, Defendants have not shown that the claim is "naturally associated" with a commonplace idea. *Swirsky*, 376 F.3d at 850.

This determination is consistent with *Satava*, on which Defendants rely. There, it was determined that a sculptor of works based on jellyfish could not assert a copyright over naturally-occurring elements including the tentacles or vertical swimming tendencies of jellyfish.. *See Satava*, 323 F.3d at 811-12; *see also Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) (similarities between competing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|---|---|---|---|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

stuffed dinosaur toys based of posture and body design stem from the physiognomy of dinosaurs or from the nature of stuffed animals and are not protectable). However, other elements of the work were protectable: "the distinctive curls of particular tendrils; the arrangement of certain hues" and other artistic choices not commonplace to the "idea" of jellyfish. *See Satava*, 323 F.3d at 810).

Here, to the extent the Copyrighted Work depicts "reptilian patterning" in the makeup and "the human face" in the mask, there is no evidence that such expressions can be "explained by the common-place presence of the same or similar 'motives' within the relevant field." *Swirsky*, 376 F.3d at 850. Thus, in order to prevail on this theory, Defendants would have to establish that use of a human-like mask to cover, and then reveal, snake-like skin features, is a common "motive" within the field of special effects makeup. This showing has not been made on the present record.

Defendants reliance on the so-called "idea/expression dichotomy" is also unpersuasive. Where the "object" of a work is "explanation," or to "communicate to the world the useful knowledge which it contains," copyright protection is not available. *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1040-41 (9th Cir. 2015). *Bikram's* determined that the development of a sequence of yoga exercises was not copyrightable because only the expression of an idea is protectable, not the idea itself. The manual in which the sequence of yoga was presented communicated ideas, *i.e.*, a yoga system designed to improve the health of its practitioners. *See id.* at 1036. In contrast, where the object of the work is expression, which includes artistic creativity, it may be protected because the purpose of the Copyright Act is to "stimulat[e] artistic creativity for the general public good." *Id.* at 1041 (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013)). Under this framework, the object of Under The Skin is expressive in nature. Thus, Defendants have not shown that it communicates any practical knowledge, or facts; rather, it is alleged to express an idea through the visual presentation of makeup on the face of a model. Such expression is protectable by copyright law.

Finally *Rentmeester*, on which Defendants also rely, does not support the dismissal of the claim of infringement advanced in the FAC. It identified differences in the creative choices present in the two photographs. These included: (i) the position of Michael Jordan's body; (ii) the distance between Jordan and the basketball hoop; (iii) the background on which Jordan's figure is placed; and (iv) the arrangement of the various elements in the photographs. *See id. Rentmeester* concluded that the photographs at issue were not substantially similar, not that artistic versions of naturally-occurring phenomena are not entitled to copyright protection. *Rentmeester* does not support the conclusion that the presence of any different elements of two works mandates a finding that the works are not substantially similar. Instead, *Rentmeester* is consistent with the principle that copyright protection extends to combinations of otherwise unprotected elements. *See, e.g.*, *Metcalf*, 294 F.3d at 1074; *Swirsky*, 376 F.3d at 848 ("[S]ubstantial similarity can be found in a combination of elements, even if those elements are individually unprotected.") (citing *Satava*, 323 F.3d at 811)). This principle applies to Plaintiff's work.

For the foregoing reasons, the Motion is **DENIED** as to the sufficiency of the copyright claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

C.    Motion to Transfer

Defendants seek the transfer of this action to the Southern District of New York pursuant to 28 U.S.C. §
1404(a). That statute provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court
> may transfer any civil action to any other district or division where it might have been
> brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

Section 1404(a) is "merely a codification of the doctrine of *forum non conveniens* for the subset of
cases in which the transferee forum is within the federal court system . . . ." *Atlantic Marine Const. Co.
v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) (citing *Sinochem Int'l Co. v. Malaysia
Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). Whether to dismiss an action pursuant to forum non
conveniens is a decision "committed to the sound discretion of the trial court." *Piper Aircraft Co. v.
Reyno*, 454 U.S. 235, 257 (1981). "A party moving to dismiss based on forum non conveniens bears
the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of
private and public interest factors favors dismissal." *Dole*, 303 F.3d at 1118 (citing *Leuck v. Sundstrand
Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001)).

The plaintiff's choice of forum should not be disturbed unless the private and public interest factors
strongly favor trial in the foreign forum. *See id.* These factors include the relative ease of access to
witnesses and evidence, judicial and party efficiency, and the interests of having localized controversies
resolved in the place where they arose. *See, e.g. Cheng v. Boeing Co.*, 708 F.2d 1406, 1409-10 (9th
Cir. 1983). Transferring venue pursuant to *forum non conveniens* is "an exceptional tool to be employed
sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo
Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

Defendants have not met their burden of showing that a balancing of the private and public factors
weighs in favor of transfer. Such issues were addressed with respect to whether the exercise of
jurisdiction over Mehron in California would be reasonable. For the same reasons, Plaintiff has
established a sufficient nexus between Defendants' conduct and this District to justify venue here.
Defendants have also failed to present a persuasive basis to conclude that transferring the action to the
Southern District of New York would make these proceedings more efficient or less expensive. *See id.*
at 1409-10; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Because Defendants have failed to meet there burden to show that the relevant factors "strongly favor"
trial in New York, there is no basis to disturb Plaintiff's choice of forum. *Dole*, 303 F.3d at 1118.
Therefore, the Motion is **DENIED** with respect to the requested transfer of venue.

**V.    Conclusion**

For the reasons stated in this Order, a ruling on the challenge to personal jurisdiction over Melik is
**DEFERRED**. Supplemental briefing shall be filed at the completion of jurisdictional discovery pursuant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-00080 JAK (MRWx) | Date | August 15, 2018 |
|----------|--------------------------|------|-----------------|
| Title | Lauren Mountain v. Mehron, Inc., et al. | | |

to the schedule set forth by this Order. The Motion is **DENIED** as to all other requested relief.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      ak